Stevee B. Deroueiae, J.
This is a motion for: (1) an order annulling and setting aside certain determinations made by the respondents constituting the State Liquor Authority of the State of New York. Research shows this to be a case.of first, impression. The petition raises a novel question of law in the area of women’s rights. The State Liquor Authority determinations which are before the court for review are:
(1) the refusal by respondent Authority to approve- a corporate change for premises under license (No. Nassau TL-171), known as “The Office Lounge” located at 90 South Grove Street, Freeport, N. Y.
(2) the refusal by respondent Authority to renew the petitioner’s expiring license to sell alcoholic beverages incident to its tavern license unless prior to expiration (Feb. 28, 1971) the president of the corporation Sandra Crandall, divests herself of all interest therein.
The particular section of the law involved in this proceeding is section 128 of the Alcoholic Beverage Control Law, which reads as follows: “It shall be unlawful for any police commissioner, police inspector, captain, sergeant, roundsman, patrolman or other police official or subordinate of any police department in the several villages, towns and cities of this state, to be either directly or indirectly interested in the manufacture or sale of alcoholic beverages or to offer for sale, or recommend to any licensee any alcoholic beverages. The solicitation or recommendation made to any licensee, to purchase any alcoholic beverages by any police official or subordinate as hereinabove described, shall be presumptive evidence of the interest of such official or subordinate in the manufacture or sale of alcoholic beverages.”
The foregoing determinations are admittedly predicated solely on the fact that Sandra Crandall is married to a Village of Freeport police officer, Richard Koehl. The Authority, on advice of its counsel, determines that this marital relationship, per se, confers an “ indirect interest ” on the fortunate bridegroom and places petitioner under the interdiction of the statute. The record before the court shows that the Authority has not used its investigative powers to determine whether factually this conclusion is justified.
*849 The petition is brought by the president of the corporation, Sandra Crandall, who has been president of the corporation since it first engaged in the sale of alcoholic beverages as part of the tavern operation in 1966.
The factual background of this proceeding is as follows:
In or about July, 1970 petitioner applied for a corporate change, the change being that Sandra Crandall, owner of 100 shares of stock of the corporation, Sanspar Restaurant Corp., desired to purchase the remaining 100 shares from one John W. Spargo.
In the application made by 'Sandra Crandall on June 10, 1970 seeking approval for the corporate change, applicant, in response to question 7 (a) which reads: “ State whether any person other than those mentioned has any interest, financial, proprietary or other, direct or indirect, in the premises or in the business to be licensed, or has made any loan to the applicant for said business or has any lien or mortgage on the fixtures in the business, ,or shares or will share, on a percentage basis or in any way, in the receipts, losses or deficiencies of the business, to any extent whatsoever other than by fixed salary. (The interests relinquished by retiring officers, directors or stockholders need not be set forth in answer to this question. Any interests retained by them, however, should be reported.) she certified the answer “ NO ”.
On October 5, 1970 the petitioner received a notice from respondents that the application was disapproved. The Authority gave the following reasons for disapproval.
“ Applicant, Sanspar Restaurant Corporation, seeks approval of a corporate change for the premises doing business as “ The Office Lounge ” situated at 90 South Grove Street, Freeport, New York.
“ The Sanspar Restaurant Corporation consists of Sandra Schlosser Crandall, president and holder of 100 issued shares of stock, and John W. Spargo, vice-president and owner of the remaining 100 shares of stock issued by the corporation. By the corporate change, ¡Sandra Crandall would purchase Mr. Spargo’s 100 shares for $6,000, payable at $300 per month for 20 months, thereby becoming sole principal and stockholder.
“ At an investigative interview held on September 16, 1970, Sandra Crandall stated that she had been divorced from her former husband, Barrett Lowell Crandall, sometime around August 1968 and that she subsequently married Richard Koehl (also known as Charles R. Koehl) on Nov. 23, 1968. She further stated that Richard Koehl had joined the Freeport, New *850 York, Police Department in January 1968, that he had helped her in the premiles before they were married, but ‘ doesn’t even go there now.’
“ Section 128 of the Alcoholic Beverage Control Law states that it shall be unlawful for any police officer ‘ of any police department in the several villages, towns and cities of this State, to be either directly or indirectly interested * * * in the sale of alcoholic beverages. ’ The marriage to an individual holding a liquor license, either in an individual capacity or as a corporate principal, constitutes such indirect interest prohibited by Section 128.
“ Under the foregoing facts and circumstances, the Authority finds that approval of instant application for approval of a corporate change would be violative of Section 128 of the Alcoholic Beverage Control Law.
“ Under all the facts and circumstances, the Authority determines that the approval of this application would create a high degree of risk and hazard in the administration and enforcement of the Alcoholic Beverage Control Law, that such approval would not be conducive to proper regulation and control; and for each and all of the foregoing reasons, the Authority determines that public convenience and advantage would not be served by such approval.”
Counsel for petitioner in a letter to the State Liquor Authority on October 13, 1970 points out:
“ The applicant is purchasing the remaining shares of the corporation, no third party is coming into the corporation. The applicant owned the premises before she married Bichard Koehl, who happens to be a police officer. It would certainly be against public policy of New York State to try and prohibit a person from getting married because the person she was marrying was a policeman, who is barred from holding a liquor license. If she had been married at the time to a policeman there would be no argument.
“ It would be a violation of the 14th Amendment of the U. S. ■Constitution to deprive the applicant the right to purchase this stock. The applicant feels that the approval of the stock sale has nothing to do with Section 128.”
After the Authority denied the application for a change in corporation interest, it referred the question of Sandra Crandall retaming her 50% interest while married to a Freeport police officer to Authority counsel, by an inter-office memorandum dated October 29,1970, as follows:
“ The Members of the Authority at their regular meeting held at the Zone I New York Office on 10/28/70 determined:
*851 ‘‘ Request for review granted and upon review prior determination is adhered to and the matter is referred to Counsel to review with respect to 50 percentage.
“Chairman, Comms. Doyle, Hart and Schmidt present and voting for the above. Comm. Balcom would approve.”
Counsel by memorandum of November 9, 1970 stated as follows:
“At the meeting held on October 28, 1970, the Members of the Authority granted a review and upon such review adhered to a prior determination disapproving a corporate change that was applied for by the licensee, as being in violation of section 128 pf the ABC Law.
“ The Members referred to Counsel for review the question arising out of the continued ownership by the wife of a police officer of 50% of the stock of the licensee corporation.
‘ ‘ It has been ascertained that Mrs. Sandra Crandall has been the owner of the 50% stock interest ever since the corporation was licensed in August, 1966. Around August 1968, Mrs. Crandall and her then husband were divorced. On November 23, 1968, Mrs. Crandall married one Richard Koehl, a member of the Freeport, New York Police Department.
“ On October 5, 1970, the Licensing Board disapproved the above referred to Corporate Change application, in which Mrs. Crandall (Koehl) sought to acquire the other 50% stock ownership, stating: ‘ Section 128 of the Alcoholic Beverage Control Law states that it shall be unlawful for any police officer “ of any police department in the several villages, towns and cities of this State, to be either directly or indirectly interested * * * in the sale of alcoholic beverages ”. The marriage to an individual holding a liquor license, either in an individual capacity or as a corporate principal, constitutes such indirect interest prohibited by Section 128.’
“Applicant’s request for review was granted by the Board and, upon review, was adhered to.
“By affirming the Licensing Board’s decision, the Members of the Authority determined that ABC Law § 128 bars the issuance of a license to a corporation whose sole stockholder, director and officer is married to a police officer. The question now presented is whether licensing the corporation in its present set-up, with a 50% shareholder who is president, treasurer and one of three directors, and who is married to a police officer contravenes § 128.
“ABC Law § 128 prohibits a policeman from having either a direct or indirect interest in licensed premises. The inclu *852 sion of * indirect interests ’ within this prohibition is sufficient to pierce the corporate veil and disqualify a shareholder from being interested in a corporation’s license if the shareholder is a police officer. The disqualification is not limited to a particular percentage of corporate ownership, but, rather, excludes a stockholder from obtaining any interest in the sale of alcoholic beverages through his ownership of stock of a licensed corporation. The Members of the Authority have already ruled that a police officer would obtain an interest in a licensed premises if his or her spouse were to have an interest in a liquor license.
“ It is Counsel’s opinion, as stated above, that a police officer is barred by § 128 from having an interest in a corporate licensee by stock ownership no matter how large or small his share of ownership is. Applying this to the Board’s prior ruling, that a police officer obtains an interest in a licensed premises by virtue of his spouse’s interest therein, it can be seen that § 128 prohibits a police officer from having any interest in a license by virtue of his spouse’s stock ownership in a licensee corporation. It is therefore held that it is not permissible under § 128, for Mrs. Crandall (Koehl) to be interested in the corporate licensee since her new husband is a police officer.
“ The Board’s attention is drawn to a somewhat analogous situation, which occurred in Suffolk L 355. There a widow, who was a package store licensee, married a police officer, and the-Board required her to divest herself of her interest in the licensed premises. In doing so, the Board allowed the woman a period of time during which to sell the premises in order to avoid financial disaster.
“It is recommended that, in the instant case, the Board require Mrs. Crandall (Koehl) to dispose of her interest in the licensee corporation, but that it allow her a reasonable period of time within which to do so in order to avoid the loss that might be sustained in a forced sale.”
The Authority reviewed the prior determination set forth in their letter of October 5, 1970 and after receiving the report of the State Liquor Authority counsel, in an inter-office memorandum dated November 10, 1970 the Authority determined:
“ The Members of the Authority at their regular meeting held at the Zone I New York Office on 11/10/70 determined:
“ Request for review granted and. upon review prior determination adhered to. Furthermore in view of the fact that Sandra Crandall, is married to a police officer the Members *853 of the Authority diíect that she divest her interest in the licensed premises on or before March 1, 1971 or the license will not be renewed.
“Chairman, Comms. Doyle, Hart and Balcom present and voting for the above. Comm. Schmidt would not require such a direction.”
By letter dated November 12, 1970 the Authority advised petitioner:
“ The Members of the Authority at their regular meeting held on November 10, 1970 granted your request for review of the disapproval of the above corporate change and upon review the prior determination of the Licensing Board was adhered to.
1 ‘ Furthermore, the Members directed that Sandra Crandall, who is married to a police officer, divest her interest in the licensed premises on or before March 1, 1971 or the license will not be renewed.
“ The Authority’s policies do not provide for any further consideration of this application. If so advised, you may seek further recourse as afforded by law.”
In an affidavit attached to the return, made by Thomas F. Ring, Chairman of the State Liquor Authority, it is stated:
“ The facts herein show that unquestionably, Richard Koehl, to whom Sandra Crandall is presently married, was and is a law enforcement officer, and as such, would have at least an indirect interest in the licensed premises by virtue of his marriage to Sandra Crandall. Accordingly, the provisions of section 128 of the Alcoholic Beverage Law, which prohibit a police officer from having a direct or indirect interest in a licensed premises, are applicable. The rationale of such determination appears obvious. Had the Authority acted otherwise, we would have the anomalous situation where a law enforcement officer might be called upon to act upon legal infractions in a licensed premises in which he would have an indirect interest. That such a situation would not be in the public interest is quite clear and cannot be disputed.
“ No one has the absolute right to traffic in alcoholic beverages. The privilege to do so, and a privilege only it is, may be withheld or granted by the State. The Legislature of the State of New York has seen fit to enact section 128 of the Alcoholic Beverage Control Law prohibiting a law enforcement officer from having a direct or indirect interest in a licensed premises, and it was in accordance with such legislative mandate that the Authority acted.”
*854 The Chairman states, at page 2 of his affidavit: ‘ ‘ the Licensing Board of the Authority disapproved such application on the mandatory ground that because of her marriage to Patrolman Koehl, section 128 of the Alcoholic Beverage Control Law applied.”
In a review proceeding such as this, the court may not substitute its opinion for that of the administrative agency. It is for the court to determine whether, based on the record, the respondent has acted in a reasonable way; whether the decision is supported by the underlying facts; or whether the determination is arbitrary and capricious. This decision will be reversed by the court as being violative of all of the foregoing standards.
The refusal by the respondent to permit the requested corporate change or to renew the present license unless and until Sandra Crandall divests herself of the 50% interest she held prior to her marriage to her present husband are each predicated on an arbitrary conclusion by the Authority — that the marriage between the licensee and her patrolman husband ipso facto bestowed an interest in the tavern business on the bridegroom. The State Liquor Authority return reveals not one scintilla of evidence to justify the conclusion that the applicant’s spouse held any interest, direct or indirect, in the licensed premises.
The State Liquor Authority, based on the memorandum from its counsel, has identified the alleged interest herein as an “ indirect interest ”. The statute applicable herein does not define these words — “ interest ” or “indirect interest”.
■ The State Liquor Authority has adopted a definition which is offensive to the spirit and intent of section 50 of the Domestic Relations Law: “Property, real or personal now owned by a married woman, or hereafter owned by a woman at the time of her marriage, or acquired by her as prescribed in this chapter, and the rents, issues, proceeds and profits thereof, shall continue to be her sole and separate property as if she were unmarried, and shall not be subject to her husband’s control or disposal nor liable for his debts,” and to section 3-305 of the General Obligations Law: “ A contract made by a married woman does not bind her husband or his property.” and to section 40-c of the Civil Rights Law: “All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.” The conclusion reached by the State Liquor Authority is memorable of the era, happily past, when a woman was not permitted to *855 own property in her own name and was regarded more or less, in law, as the chattel of her spouse.
The court recognizes the need to regulate and control the sale and distribution of alcoholic beverages within the State (Alcoholic Beverage Control Law, § 2) and appreciates the legislative intent in the enactment of section 128. However, the bald conclusion by the State Liquor Authority that the marriage of this licensee to a police officer ipso facto creates an interest in favor of the bridegroom-police officer in the licensed business must be set aside as having no basis in law or fact. This is not to say that under a different factual situation a marriage may not create an interest, but the interest must be found to have a foundation in fact. The interest is not created by operation of law.
On the present record it is the ultimate in arbitrariness for the State Liquor Authority, as an arm of the State, to effectively sabotage the duly enacted law of the State (Domestic Relations Law, § 50; General Obligations Law, § 3-305). These laws have vested women with individual property rights. If the State Liquor Authority in fact believes that public policy or interest requires a statutory provision that marriage between a licensee and a police officer should be grounds, per se, for a refusal to issue a license, then the court suggests (without commenting on the constitutionality thereof) that the State Liquor Authority undertake to have the Alcoholic Beverage Control statute so amended.
There has been no attempt on the part of the State Liquor Authority’s investigative unit to ascertain facts to support the arbitrary decision it has made. The State Liquor Authority has not attacked the veracity of petitioner where in her application she states “no interest” (meaning of any form not revealed therein), supra. The State Liquor Authority has the power of subpoena and could have familiarized itself with any and all phases of the licensee’s operation. Instead, the State Liquor Authority elected to invoke an arbitrary application and interpretation of the statute. The Authority cites a precedent of prior ¡State Liquor Authority determinations. It appears these determinations have been blandly accepted by the affected individuals. They are not determinations which have survived the scrutiny of judicial review and are not appellate in any sense.
The 'State Liquor Authority has demonstrated no present, future or contingent interest by the husband of the licensee. There has been no factual showing by respondent that the bus- *856 band has even the slightest right of control, or is subject to any liability for the operation of the licensed premises.
The law clearly states that marriage does not confer on the husband an interest in the wife’s individually owned property. ‘ ‘ The property of a wife is her sole and separate property, and such property is not subject to her husband’s control or disposal.” (People v. Law, 31 A D 2d 554, 555.)
In the court’s opinion the respondent State Liquor Authority was not justified in refusing to approve the corporate change, or in ordering petitioner to ‘ ‘ sell out ” as a condition precedent to license renewal on the ground assigned by it. It is crystal clear that the Authority has made an arbitrary ruling insupportable in fact or law. There is no legal precedent for the conclusion that the wife of a policeman is within the interdiction of section 128 of the Alcoholic Beverage Control Law solely because of the marriage.
The court is fully cognizant of the fact that a liquor license is a privilege subject to the jurisdiction of the State Liquor Authority; however, on review of the State Liquor Authority action, it is subject to the jurisdiction of the State Supreme Court (Matter of Bay Ridge Inn, 94 F. 2d 555 [C. A. 2d]).
For all of the foregoing reasons all of the determinations herein reviewed are annulled, and respondent is ordered to grant the corporate change requested.